UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------X

CHARLES DERISE,

                    *Plaintiff*,

    -against-

COMMISSIONER OF SOCIAL SECURITY,

                  *Defendant*.

--------------------------------------X

**MEMORANDUM AND ORDER**

21-CV-0565(KAM)

**KIYO A. MATSUMOTO, United States District Judge:**

        Plaintiff Charles DeRise ("Plaintiff") appeals a final decision of the Commissioner of the Social Security Administration ("the Commissioner") which found that Plaintiff was not disabled and thus not entitled to disability insurance benefits under Title II of the Social Security Act (the "Act"). Presently before the Court are Plaintiff's motion for judgment on the pleadings and the Commissioner's cross-motion for judgment on the pleadings. For the reasons set forth below, Plaintiff's motion is respectfully **DENIED**, and the Commissioner's cross-motion is **GRANTED**.

1

**Background**

The parties have filed a joint statement of stipulated facts, which the Court has reviewed and incorporates by reference. (*See* ECF No. 16, Joint Stipulation of Facts "Stip.").)  The Court briefly recounts the facts relevant to the instant motions.

Plaintiff was born on November 15, 1967, and was employed as a maintenance worker for about 30 years at a public school in New York City. (ECF No. 13, Administrative Transcript ("Tr.") at 47, 256.)  Plaintiff filed an application for disability insurance benefits ("DIB") on January 9, 2019, alleging a disability beginning on April 20, 2018, due to "disc degeneration" and "nerve pain in back and legs due to disc degeneration." (*Id.* at 75, 203.)  The claim was denied initially on May 3, 2019, and upon reconsideration on July 3, 2019. (*Id.* at 108, 121.)  On August 12, 2019, plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 133-34.)  ALJ Jason A. Miller held a hearing on Plaintiff's claims on February 28, 2020. (*Id.* at 40).

On March 19, 2020, the ALJ determined that that Plaintiff was not disabled under the Act because he retained the residual functional capacity ("RFC") to perform a reduced range of light work as defined in 20 CFR § 404.1567(b) and, considering "claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy

2

that the claimant can perform." (*Id.* at 17, 22).  In making his RFC determination, the ALJ weighed the medical opinions of Drs. Yevsikova, Feldman, and Marasigan.  (*Id.* at 21.)  The ALJ found the opinion of Dr. Yevsikova was "stated in non-specific terms" and her findings "showed deficits that were not noted by any other examiner" and as such, her conclusions were "not persuasive in supporting a [RFC] assessment." (*Id.*)  The ALJ found the opinions of both Drs. Marasigan and Feldman were "supported by [Plaintiff's] [medical history]" and were not inconsistent with additional medical evidence "adduced since the date of their opinions," and therefore the ALJ "deemed [their opinions] to be persuasive." (*Id.*)

On April 9, 2020, Plaintiff appealed the ALJ's decision to the Appeals Council.  (*Id.* at 169–72.)  On December 2, 2020, the Appeals Council denied review of the ALJ's decision, rendering it the final decision of the Commissioner.  (*Id.* at 1.)  On February 3, 2021, Plaintiff filed the instant action seeking judicial review of the Commissioner's decision.  (*See* ECF No. 1, Complaint.)

## **Legal Standard**

To receive disability benefits, a claimant must be "disabled" within the meaning of the Act.  *See* 42 U.S.C. §§ 423(a),(d).  A claimant qualifies as disabled when he is unable to "engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The impairment must be of "such severity" that the claimant is unable to do his previous work or engage in any other kind of substantial gainful work. *Id.* § 423(d)(2)(A). "The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999)) (alterations in original).

An unsuccessful claimant for disability benefits under the Act may bring an action in federal court seeking judicial review of the Commissioner's denial of his or her benefits. 42 U.S.C. §§ 405(g), 1383(c)(3). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation marks and citation omitted); *see also* 42 U.S.C. § 405(g). "Substantial evidence is 'more than a mere scintilla'" and must be relevant

4

evidence that "a reasonable mind might accept as adequate to support a conclusion." *Hallaron v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld.  42 U.S.C. § 405(g).  Inquiry into legal error requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citation omitted).  The reviewing court does not have the authority to conduct a *de novo* review and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result.  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether the claimant's condition meets the Act's definition of disability.  *See* 20 C.F.R. § 404.1520.  This process can be summarized as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant

5

    is not capable of continuing in his prior type of work,
    the Commissioner must find him disabled if (5) there is
    not another type of work the claimant can do.

*Burgess*, 537 F.3d at 120 (internal quotation marks and citation

omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

        During this five-step process, the Commissioner must

consider whether the combined effect of any such impairment would

be of sufficient severity to establish eligibility for Social

Security benefits.  20 C.F.R. § 404.1523(c).  Further, if the

Commissioner does find a combination of impairments, the combined

impact of the impairments, including those that are not severe (as

defined by the regulations), will be considered in the

determination process.  20 C.F.R. § 416.945(a)(2).  At steps one

through four of the sequential five-step framework, the claimant

bears the "general burden of proving . . . disability." *Burgess*,

537 F.3d at 128.  At step five, the burden shifts from the claimant

to the Commissioner, requiring that the Commissioner show that, in

light of the claimant's RFC, age, education, and work experience,

the claimant is "able to engage in gainful employment within the

national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310

(E.D.N.Y. 1997).

        Lastly, federal regulations explicitly authorize a

court, upon reviewing decisions of the Commissioner, to remand for

further proceedings when appropriate.  "The court shall have power

to enter, upon the pleadings and transcript of the record, a

judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."   42 U.S.C. § 405(g).   Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard."   *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)).   Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision.   *Pratts*, 94 F.3d at 39.   If the record before the court provides "persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," however, the court may reverse and remand solely for the calculation and payment of benefits.   *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *see also Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013).

## DISCUSSION

### I.   The ALJ's Disability Determination

Using the five-step sequential process described above, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since April 20, 2018, the alleged onset date.   (Tr. at 15.)   At step two, the ALJ determined that Plaintiff had the following severe impairments: "[d]egenerative disc disease and spondylosis of the lumbar spine, and clinical obesity."   (*Id.* at 16.)   The ALJ found that Plaintiff's impairments "are shown to result in vocationally significant limitations and

7

have lasted at a 'severe' level for a continuous period of more than 12 months." (*Id.*)  The ALJ noted that Plaintiff "did not list any other relevant disabilities in his original application" but "a review of the case record does show other medical conditions with which he has been diagnosed." (*Id.*)  The ALJ then reviewed Plaintiff's other medical conditions, including hypertension, hyperlipidemia, pre-diabetes, gout, and a thyroid program, but concluded that the impairments "do not appear to have significantly limited his physical ability to do basic work activities." (*Id.*)  Accordingly, the ALJ concluded that Plaintiff's other medical conditions were not "severe" impairments, but "considered all of [Plaintiff's] medically determinable impairments, including those that are not severe, when assessing" Plaintiff's RFC. (*Id.*)

The ALJ also reviewed Plaintiff's history of mental health treatment since June 2017, which originated prior to the April 20, 2018, onset date of Plaintiff's work-related physical impairments. (*Id.*)  Plaintiff was diagnosed with panic disorder in March 2019 by Dr. David Schaich, a psychological consultative examiner, but Dr. Schaich opined that the psychiatric problems "do[] not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." (*Id.* at 16, 425.)  The ALJ also noted that Drs. Haus and Butler, two State agency psychological consultants, reviewed the file and "determined that the claimant had functionally non-severe mental

8

health impairments." (*Id.* at 16.)  As a result, after considering the areas of mental functioning set out in the disability regulations and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1), the ALJ concluded that Plaintiff's "medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas." (*Id.* at 16-17.)  Because the evidence did not otherwise indicate "more than a minimal limitation in [Plaintiff's] ability to do basic work activities," the ALJ concluded that Plaintiff's mental impairments were non-severe. (*Id.* at 17.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).  (Tr. at 17.)  Specifically, the ALJ determined that Plaintiff's impairments did not meet the criteria of Listing 1.04.  (*Id.*)

First, the ALJ determined that Plaintiff's spinal impairment did not satisfy the Listing 1.04 because he still had normal strength, sensation and reflex abilities in his lower extremities as evidenced by plaintiff's visit to his surgeon four months after lumbar fusion surgery.  (*Id.*)

Second, the ALJ, although having considered obesity under SSR 19-2p, determined that there was no evidence that

Plaintiff's obesity met or medically equaled a listing. (*Id.*) The ALJ found that the condition did not cause additional functional limitations and that Plaintiff had "not exhibited an inability to ambulate 'effectively', as that term is defined within Listing 1.00B2b." (*Id.*)

Next, the ALJ determined that Plaintiff had the RFC to perform a reduced range of light work, with the following limitations:

> Specifically, he can lift and/or carry 20 pounds occasionally, 10 pounds frequently. He can stand and/or walk, with normal breaks, for a total of six hours per eight-hour workday, and can sit, with normal breaks, for a total of six hours per eight-hour workday. Further, in terms of postural limitations, he can only occasionally climb, balance, stoop, kneel, crouch, and crawl.

(*Id.*)

At step four, the ALJ concluded that Plaintiff was unable to perform his past relevant work as a maintenance worker. (*Id.* at 21).

At step five, the ALJ concluded that there were existing jobs in sufficient numbers within the national economy that Plaintiff could perform despite his limitations. (*Id.* at 22). The ALJ asked the vocational expert to determine whether there were jobs in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. (*Id.*) The vocational expert testified that given all these factors, such an

10

individual would be able to perform the requirements of representative occupations such as "[m]ail sorter," "[p]rice marker," and "[e]lectric assembler." (*Id.*) Thus, the ALJ concluded that Plaintiff could make a successful adjustment to other work that exists in significant numbers in the national economy, and therefore a finding of "not disabled" was appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines. (*Id.* at 22-23.)

## II.   The ALJ Sufficiently Developed the Record

"Whether the ALJ has met his duty to develop the record is a threshold question that must be determined before the Court reviews whether the ALJ's final decision is supported by substantial evidence." *Miranda v. Comm'r of Soc. Sec.*, No. 22-cv-4226 (PKC), 2023 WL 6385727, at *6 (E.D.N.Y. Sept. 29, 2023) (internal quotation marks and citation omitted). Even when not raised by the claimant, the Court "must independently consider the question of whether the ALJ failed to satisfy his duty to develop the Record." *Sanchez v. Saul*, No. 18-cv-12102 (PGG), 2020 WL 2951884, at *23 (S.D.N.Y. Jan. 13, 2020), *report and recommendation adopted*, 2020 WL 1330215 (S.D.N.Y. Mar. 23, 2020). "[B]ecause a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (citation omitted). This duty exists "even where, as

here, the claimant is represented by counsel." *Merriman v. Comm'r of Soc. Sec.*, No. 14-cv-3510 (PGG), 2015 WL 5472934, at *18 (S.D.N.Y. Sept. 17, 2015) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)).  "Legal errors regarding the duty to develop the record warrant remand." *Wilson v. Colvin*, 107 F. Supp. 3d 387, 407 (S.D.N.Y. 2015) (collecting cases).

Plaintiff argues that "if the ALJ was unsatisfied with Dr. Yevsikova's medical opinion, it was his duty to seek clarification from Dr. Yevsikova."  (ECF No. 14-1, Plaintiff's Memorandum of Law ("Pl. Mem.") at 13.)  Courts have concluded, in other circumstances, that an ALJ should have sought additional information to fill a record consisting of "sparse" and "wholly conclusory" notes of a single treating physician.  *Rosa v. Callahan*, 168 F.3d 72, 79-80 (2d Cir. 1999).  However, where an ALJ has a "complete record before [him] consisting of medical opinions, treatment notes, and test results . . . the ALJ did not err in failing to supplement the administrative record." *Schillo v. Kijakazi*, 31 F.4th 64, 76 (2d Cir. 2022).

The ALJ in the present case had numerous medical records from the alleged onset of Plaintiff's disability in April 2018 through September 2019.  (Tr. at 268-446.)  In addition, the ALJ reviewed, and relied on, two independent medical opinions in crafting an RFC, in addition to Dr. Yevsikova's opinion.  (*Id.* at 21.)  As a result, in making his determination the ALJ did not

12

issue a "patchwork" RFC that "lack[ed] a clear basis in the record's medical evidence." *Lao v. Comm'r of Soc. Sec.*, No. 18-cv-07462 (FB), 2020 WL 4194210, at *3 (E.D.N.Y. July 21, 2020). Instead, the ALJ concurred with the RFC determination of Drs. Marasigan and Feldman, and simply assigned less weight to the opinion of Dr. Yevsikova, which did not contain an explicit RFC assessment. (Tr. at 17, 21.)   The instant case does not present a situation where the ALJ, in the presence of conflicting medical evidence, simply made up an RFC out of whole cloth.   Rather, the ALJ's RFC assessment was supported by substantial evidence, and given the medical record was "otherwise complete, there [was] no duty to recontact." *Jasen v. Comm'r of Soc. Sec.*, No. 16-cv-6153P (MWP), 2017 WL 3722454, at *12 (W.D.N.Y. Aug. 29, 2017).

Plaintiff has pointed to no gaps in the administrative record, but disputes the weight assigned by the ALJ to Dr. Yevsikova's opinion.   (Pl. Mem. at 13.)   "Where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks and citation omitted). Accordingly, the court finds that the ALJ sufficiently developed the record in the instant case.

III.  **The ALJ Properly Evaluated the Medical Opinion Evidence in Making the RFC Determination**

A. **New Regulations Governing the Evaluation of Medical Opinion Evidence**

In 2017, new regulations were issued that changed the standard for evaluating medical opinion evidence regarding claims filed on or after March 27, 2017. *See* 20 C.F.R. § 416.920c.  Because Plaintiff filed his claim on January 9, 2019, the new regulations apply.

Under the new regulations, the Commissioner no longer "defer[s]" or gives "controlling weight" to a claimant's treating medical sources. *Id.* § 416.920c(a).  Instead, when evaluating the persuasiveness of medical opinions, the Commissioner considers the following five factors: (1) supportability; (2) consistency; (3) the relationship of the medical source with the claimant (taking into account the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the relationship is an examining relationship); (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing [the] medical source has familiarity with the other evidence in the claim or an understanding of [the SSA] disability program's policies and evidentiary requirements." *Id.* § 416.920c(c).  In each case, the ALJ must explain how he or she considered the factors of

14

supportability and consistency, the two most important factors for determining persuasiveness. *Id.* § 416.920c(a), (b)(2).

### B. The ALJ's Assessment of Medical Opinion Evidence

Plaintiff contends that the ALJ erroneously discounted the medical opinion of Dr. Yevsikova. (Pl. Mem. at 13.) Plaintiff also argues that the ALJ erroneously focused on the medical opinions of Drs. Feldman and Marasigan. (*Id.* at 14-15.)

Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(a). With respect to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2). The ALJ must explain how he or she considered the "supportability" and "consistency" factors for a medical source's opinion. *Id.* § 404.1520c(b)(2). The ALJ may, but is not

required to, explain how he or she considered the remaining factors. *Id.*

Here, after reviewing the ALJ's decision and the medical evidence in the record, the Court concludes that the ALJ properly weighed the medical opinions and that, as a result, his RFC assessment was based on substantial evidence. As set forth below, the ALJ evaluated the persuasiveness of each medical source and explained how he determined the supportability and consistency of each opinion, as required by 20 C.F.R. § 404.1520c. *See Raymond M. v. Comm'r of Soc. Sec.*, No. 19-CV-1313 (ATB), 2021 WL 706645, at *8 (N.D.N.Y. Feb. 22, 2021) (citation omitted) ("At their most basic, the amended regulations require that the ALJ explain h[is] findings regarding the supportability and consistency for each of the medical opinions, 'pointing to specific evidence in the record supporting those findings.'").

### i. Medical Opinion of Dr. Yevsikova

Dr. Yevsikova examined Plaintiff and opined that he had "moderate limitation to heavy lifting, heavy carrying, pulling, pushing," bending, climbing stairs frequently, and walking for a prolonged time; mild to moderate limitation to squatting, kneeling, and standing for a prolonged time; and mild limitation to sitting for a prolonged time and performing overhead activities. (Tr. at 437.) Dr. Yevsikova further opined that Plaintiff should avoid "unprotected heights" and "any activities that can put [him]

16

at risk for fall." (*Id.*)  Dr. Yevsikova's examination notes also included the results of musculoskeletal and other objective testing she conducted, including range of motion for Plaintiff's hips, shoulders, knees, and ankles.  (*Id.* at 436.)

Plaintiff argues that the ALJ "did not provide any meaningful discussion regarding the supportability or consistency (or lack thereof) of Dr. Yevsikova's opinion," and thus failed to consider either factor.  (Pl. Mem. at 13.)  The ALJ determined, however, both that Dr. Yevsikova's "findings showed deficits that were not noted by any other examiner (such as limitation of motion in the bilateral shoulders, hips, knees, and ankles)" and that her "medical source opinion was stated in non-specific terms."  (Tr. at 21.)  Contrary to Plaintiff's assertions, the discussion by the ALJ reflects an analysis of both supportability and consistency of Dr. Yevsikova's opinion.

First, regarding consistency, the ALJ noted that Dr. Yevsikova's findings of Plaintiff's limitation of motion were not consistent with findings by other examiners.  (*Id.*)  Earlier in his findings, the ALJ observed that, subsequent to Plaintiff's lumbar interbody fusion surgery, Plaintiff's November 2018 physical examination "was within normal limits in most respects, with normal gait, and normal reflexes, normal strength, normal sensation, and negative straight leg raise testing." (*Id.* at 19). The ALJ also noted that in Plaintiff's most recent visit with his

17

surgeon, in January 2019, "he was doing 'quite well'" and "his symptoms were deemed to be stable." (*Id.*)  Dr. Yevsikova's findings regarding Plaintiff's mobility limitations were therefore at least in tension with other medical evidence, and the ALJ did not err in considering that as part of his evaluation of the consistency of Dr. Yevsikova's opinion.  The ALJ correctly raised and discussed essential evidence that influenced his consistency determination and was not required to "reconcile explicitly every conflicting shred of medical testimony." *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (internal quotation marks and citation omitted).  Contrary to Plaintiff's suggestion, the ALJ need not have identified each of those inconsistent findings explicitly in his opinion in order to properly consider the consistency of Dr. Yevsikova's opinion. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("the ALJ was not required to identify evidence explicitly rebutting the opinions of Smith's treating physicians before discounting or rejecting them").

The ALJ's findings regarding the supportability of Dr. Yevsikova's opinion—that it was stated in "non-specific terms," (Tr. at 21)—also reflect a proper consideration of the evidence. Despite performing a battery of objective tests on Plaintiff, Dr. Yevsikova did not further clarify what she meant when she opined that Plaintiff had a "moderate limitation" for a variety of activities, such as "walking for a prolonged time" or "heavy

18

lifting." (*Id.* at 437.) As compared to the opinion of Dr. Marasigan, which stated that Plaintiff could stand or work for "[a]bout 6 hours in an 8-hour workday" and could lift or carry 20 pounds for "1/3 or less of an 8 hour day" or 10 pounds for "1/3 up to 2/3 of an 8 hour day," (*Id.* at 83–84), Dr. Yevsikova's opinion offers very little information to the ALJ regarding "what [Plaintiff] can still do despite [his] impairment(s)," 20 C.F.R. § 404.1513(a)(2). Dr. Feldman provided a nearly identical evaluation to Dr. Marasigan regarding Plaintiff's functional capacity to stand, work, lift, and carry during an 8-hour workday. (Tr. at 71–72). Finally, Dr. Yevsikova, while factually describing the results of her battery of tests, does not include any explanation of what supporting evidence led to her conclusions regarding Plaintiff's specific limitations. (*Id.* at 433–37). Given Dr. Yevsikova's non-specific characterizations of what Plaintiff could still do, and why, in addition the previously discussed concerns regarding consistency, the ALJ did not commit reversible error by failing to credit her medical opinion.

### ii. Medical Opinion of Drs. Marasigan and Feldman

Plaintiff also argues that the ALJ erroneously relied on the medical opinions of Drs. Marasigan and Feldman. (Pl. Mem. at 14–15.)

Plaintiff first claims that the ALJ erred in relying on both doctors' opinion given "neither doctor examined [Plaintiff]

19

and neither doctor reviewed any medical records after June 2019."
(*Id.* at 14.)  The ALJ, however, found the doctors' opinions, after
they reviewed Plaintiff's medical records, were "supported by the
claimant's history of fusion surgery [] with occasional complaints
of pain and paresthesias" and noted that "[v]ery little additional
evidence has been adduced since the dates of their opinions." (Tr.
at 21).  The ALJ further noted "the subsequent September 2019
lumbar spine MRI does not show additional abnormalities that would
suggest greater restrictions" in reference to Plaintiff's
September 4, 2019, MRI.  (*Id.* at 21, 442.)  Accordingly, it was
reasonable for the ALJ to conclude that both doctors' opinions
were not stale, as they were consistent with the subsequent record
evidence.  See *Dronckowski v. Comm'r of Soc. Sec.*, No. 18-CV-
0027(WBC), 2019 WL 1428038, at *5 (W.D.N.Y. Mar. 29, 2019)
(explaining that a dated opinion is not stale unless the plaintiff
can show subsequent deterioration in his or her condition); *see
also Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 79–80
(N.D.N.Y. 2005) (stating that an ALJ may rely on a dated
physician's testimony provided the ALJ also accounts for
subsequent evidence).

Second, Plaintiff notes that Dr. Marasigan noted that
"the evidence as a whole, both medical and non-medical, [was] not
sufficient to support a decision on the claim" and accordingly
felt a consultative examination was required.  (Tr. at 80.)  Dr.

20

Feldman included the same annotation in his opinion, although he did not review and revise his opinion following the consultative examination. (*Id.* at 68, 72). Plaintiff claims that, subsequent to the consultative examination, Dr. Marasigan "relied heavily on [Dr. Yevsikova's examination findings] to form his opinion" and "assert[ed] that Dr. Yevsikova's opinion [was] not more restrictive than his, which is [] incorrect." (Pl. Mem. at 15). Plaintiff's assertions reflect a misinterpretation of the record.

Dr. Marasigan noted the findings from Dr. Yevsikova's examination (discussing Plaintiff's gait, stance, ability to rise from a chair, lumbar spine flexion, straight leg raise test, and muscle strength) and then stated "[b]ased on the objective evidence in file [Plaintiff] is being given a[n] RFC of light and the prior determination of 5/1/19 is affirmed." (Tr. at 81). As a result, while Dr. Marasigan noted Dr. Yevsikova's findings, he ultimately stated that his prior finding of May 1, 2019 was "affirmed." (*Id.*) Plaintiff's claim that Dr. Marasigan "relied heavily on" Dr. Yevsikova's findings to "form his opinion" is inconsistent with the fact that Dr. Marasigan made no change to his opinion and RFC determination after reviewing Dr. Yevsikova's findings.

Furthermore, while Plaintiff contends that Dr. Marasigan was "incorrect" in asserting that Dr. Yevsikova's opinion was "not more restrictive than his," Plaintiff fails to state exactly what *was* more restrictive about Dr. Yevsikova's opinion as compared to

21

Dr. Marasigan's opinion.  (Pl. Mem. at 15).  Given the lack of specificity in Dr. Yevsikova's opinion, it is not actually clear whether her opinion was more restrictive than Dr. Marasigan's. For example, Dr. Marasigan noted that Plaintiff could lift or carry 20 pounds for 1/3 or less of an 8-hour day.  (Tr. at 83).  In comparison, Dr. Yevsikova opined that Plaintiff had a "moderate limitation to heavy lifting [and] heavy carrying." (*Id.* at 437). Given the lack of specificity in Dr. Yevsikova's opinion, the Court cannot accept Plaintiff's contention that Dr. Marasigan was "incorrect" in stating there were no medical opinions about Plaintiff's abilities and limitations more restrictive than his findings.  Beyond this, even if a conflict did exist between the opinions of Dr. Marasigan and Dr. Yevsikova, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would *have to conclude otherwise*." *Morris v. Berryhill*, 721 F. App'x 25, 29 (2d Cir. 2018) (internal citations and quotations omitted); *see also Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) (the deferential standard of review prevents a court from reweighing evidence).  Plaintiff has not sufficiently shown that the ALJ's resolution of any potential conflict in the evidence was unreasonable or unsupported by the evidence in the record. Accordingly, the ALJ did not commit reversible error by relying on the medical opinion of Drs. Marasigan and Feldman.

For the reasons discussed above, the Court concludes that the ALJ adequately weighed the relevant medical opinions in assessing the severity of Plaintiff's condition and making an RFC determination. Accordingly, because the ALJ's findings were consistent with the record as a whole, and because the record was properly developed, the Court concludes that substantial evidence supports the ALJ's determination.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is DENIED, and Defendant's motion for judgment on the pleadings is GRANTED. The Clerk of Court is respectfully directed to enter judgment in favor of the Commissioner and close this case.

**SO ORDERED**

Dated:     October 31, 2023
           Brooklyn, New York

**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York

23